897 So.2d 49 (2004)
STATE of Louisiana
v.
Greg PICARD.
No. 2003 KA 2422.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
*51 Doug Moreau, District Attorney, Baton Rouge, By Wick Cooker, Jeanne Rougeau, Assistant District Attorney, Counsel for Plaintiff/Appellee State of Louisiana.
Kevin P. Monahan, Baton Rouge, Counsel for Defendant/Appellant Greg Picard.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The defendant, Greg Picard, was charged by bill of information with driving while intoxicated (DWI), fourth offense, a violation of La. R.S. 14:98(E). He pled not guilty and moved to quash the bill of information. The trial court denied the motion. On April 22, 2003, following a trial by jury, the defendant was found guilty as charged. He was fined $5,000.00 and sentenced to imprisonment for fourteen years at hard labor. The trial court suspended all but sixty days of the imprisonment sentence and ordered that this period be served without benefit of probation, parole, or suspension of sentence.[1] Defendant now appeals.

FACTS
On March 30, 2001, Louisiana State Police Trooper Jimmy Thaxton stopped the defendant after observing him driving in excess of the posted speed limit (81 miles per hour in a 60 miles per-hour zone) on Interstate 10 in Baton Rouge. According to Trooper Thaxton, the defendant smelled of alcohol and appeared intoxicated. The defendant performed poorly on all field sobriety tests administered. The defendant was arrested and transported to State Police Troop A for an intoxilyzer test. After being informed of his rights relating to the chemical test for intoxication, the defendant refused to submit to the test. He was transported to East Baton Rouge Parish Prison and charged with DWI. The defendant had three prior DWI convictions.

*52 MOTION TO QUASH

In his first assignment of error, the defendant challenges the validity of two of his predicate convictions: February 3, 2000, Docket Number CF99-4653, in the district court of Tulsa County, Oklahoma, and May 23, 1997, Docket Number CF97-347, in the district court of Tulsa County, Oklahoma. Specifically, he asserts that the documents submitted by the State in support of these Oklahoma convictions were insufficient to prove that the trial court advised him of the elements and/or nature of the offenses to which he pled guilty. Thus, he contends the State failed to carry its burden of proving the constitutionality of the alleged predicate guilty pleas.
The State contends the defendant is procedurally barred from raising the issue of the validity of his prior DWI convictions on appeal because he stipulated to the existence of these convictions at his jury trial. In the alternative, the State contends the documents introduced as proof of the Oklahoma predicates were adequate to show the existence of these prior DWI guilty pleas and that the defendant was represented by counsel. Thus, the State argues that since the defendant made no affirmative showing of an infringement of his rights, there is a presumption of regularity in the predicate convictions.
In the instant case, as the State points out in its brief, prior to presenting any evidence, the following stipulation was entered into the record:
[T]he State and defense enter into a stipulation wherein the defendant, Greg Picard, is the same person who has previously been convicted of driving a motor vehicle while under the influence of alcoholic beverages three times. Once for an offense on April 23, 1993 and a conviction on May 10, 1994, in the Nineteenth Judicial District Court, Docket Number 9-93-777, in Baton Rouge, Louisiana. Two, for an offense on January 21, 1997 and conviction on May 23, 1997, in the Tulsa County, Oklahoma District Court, Docket Number CF97-347. Three, for an offense on September 21, 1999 and conviction on February 3, 2000, in the Tulsa County, Oklahoma District Court, Docket Number CF99-4653.
We note, contrary to the State's contentions, the language of the aforementioned stipulation does not reflect a waiver of the defendant's right to challenge the constitutionality of the predicate convictions. While the language of the stipulation indicates that the defendant is the same person who was previously convicted of the alleged predicate offenses, the stipulation does not address whether the defendant was adequately advised of his Boykin rights or whether he was represented by counsel at the time of the predicate guilty pleas. Because the defendant did not stipulate to the constitutionality of the alleged predicate convictions, we cannot say he waived the issue of the validity of the predicates, which he now challenges on appeal.
In order for a guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that by pleading guilty he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. The judge also must ascertain that the accused understands what the plea connotes and its consequences. State v. Cadiere, 99-0970, p. 3 (La.App. 1st Cir.2/18/00), 754 So.2d 294, 296. If the defendant denies the allegations of the bill of information, the State has the initial burden to prove the existence of the prior guilty plea and that the *53 defendant was represented by counsel when it was taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. See State v. Deville, XXXX-XXXX (La.7/2/04), 879 So.2d 689. See also State v. Carlos, 98-1366, pp. 6-8 (La.7/7/99), 738 So.2d 556, 559-60. To meet this requirement, the State may rely on a contemporaneous record of the guilty plea proceeding, i.e., either the transcript of the plea or the minute entry. Everything that appears in the entire record concerning the predicate, as well as the trial judge's opportunity to observe the defendant's appearance, demeanor, and responses in court, should be considered in determining whether or not a knowing and intelligent waiver of rights occurred. Boykin only requires that a defendant be informed of the three rights enumerated above. The jurisprudence has been unwilling to extend the scope of Boykin to include advising the defendant of any other rights that he may have. State v. Henry, 2000-2250, pp. 8-9 (La.App. 1st Cir.5/11/01), 788 So.2d 535, 541, writ denied, 2001-2299 (La.6/21/02), 818 So.2d 791.
In the instant case, in support of predicate number one (CF99-4653) to enhance the instant offense, the State introduced a Tulsa County, Oklahoma bill of information charging the defendant with, among other things, Driving Under the Influence of Intoxicating Liquor, Second Offense. The State also introduced the transcript, minute entries, and guilty plea forms, all reflecting the defendant's guilty plea to the aforementioned charge and also indicating that defendant was represented by counsel at the time of the plea.
In support of the use of predicate number two (CF97-0347), the State introduced a bill of information, the minutes of the guilty plea, and guilty plea forms indicating that the defendant, while represented by counsel, pled guilty to the charged offense.
Upon reviewing the record in this case, we find that by introducing the aforementioned documents, the State adequately satisfied its initial burden of proof. The documentation sufficiently showed that the defendant was charged with and pled guilty to the offenses and that he was represented by counsel when the guilty pleas were accepted. The State did not, at this juncture, bear the burden of proving the constitutionality of the prior guilty pleas.
Once the State met its initial burden of proof, it was then incumbent upon the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the predicate guilty pleas. Defendant could have attempted to meet this burden by introducing a certified copy of the transcript from the prior pleas, testimony regarding the taking of the pleas, or any other affirmative evidence. If defendant had met this burden, the burden of proof would have shifted back to the State to prove the constitutionality of the prior guilty pleas. However, the record is devoid of any evidence introduced by defendant even attempting to meet this burden on either predicate. At the hearing on the motion to quash, the defendant vigorously argued against use of the prior guilty pleas as predicates, but failed to present any affirmative evidence in support of his argument. When the trial court asked, "[d]oes the defense have any evidence they wish to introduce in this motion to quash?", counsel for the defendant responded, "[n]o sir." Thus, we find that the defendant failed in *54 his burden of proof. Consequently, the burden of proving the constitutionality of the prior guilty pleas never shifted back to the State. "It is in this situation that the presumption of regularity attaching to a final judgment of conviction is intended to operate." State v. Denomes, 95-1201, p. 10 (La.App. 1st Cir.5/10/96), 674 So.2d 465, 471, writ denied, 96-1455 (La.11/8/96), 683 So.2d 266.
Moreover, we find that the guilty plea forms along with the other information that appears in the record, viewed as a whole, establish express and knowing waiver of the defendant's constitutional rights in both of the challenged predicates. Accordingly, the trial judge correctly denied the defendant's motion to quash as to the Tulsa, Oklahoma predicate DWI convictions. This assignment of error lacks merit.

SUFFICIENCY OF THE EVIDENCE
In his second assignment of error, the defendant contends the evidence presented at trial was insufficient to support his conviction of DWI, fourth offense. Specifically, he avers the evidence failed to show, beyond a reasonable doubt, that the defendant was under the influence of alcohol.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Graves, 95-0578, p. 7 (La.App. 1st Cir.5/10/96), 675 So.2d 1141, 1145.
To convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle and that he was under the influence of alcohol or drugs. La. R.S. 14:98(A); State v. Graves, 95-0578 at p. 7, 675 So.2d at 1145. In the instant case, there is no dispute that the defendant was operating a vehicle, and the defendant stipulated that he had been convicted of the three predicate DWI offenses used by the State to enhance the instant DWI to a fourth offense. Thus, we are concerned only with whether the State proved that the defendant was under the influence of alcohol at the time he was operating the vehicle.
Intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. Anderson, XXXX-XXXX, p. 10 (La.App. 1st Cir.3/28/01), 784 So.2d 666, 676, writ denied, XXXX-XXXX (La.4/19/02), 813 So.2d 421. Furthermore, an officer's subjective *55 opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. See State v. Smith, 93-1490, p. 6 (La.App. 1st Cir.6/24/94), 638 So.2d 1212, 1215.
In Smith, 93-1490 at pp. 3-4, 638 So.2d at 1214, this court found the evidence sufficient to support a DWI conviction where the trooper testified that the defendant smelled of alcohol, his speech was slurred and deliberate, his eyes were bloodshot, he was staggering, he admitted that he had consumed four beers, he was uncooperative and aggressive after being arrested, and he refused to take the breath test. Similarly, a DWI conviction was found to be supported by the evidence when a trooper observed the defendant's erratic driving, physical appearance, slurred speech, and behavior. The defendant failed the field sobriety tests. He attempted to hide a vodka bottle under the back seat of his truck, and he admitted he had drunk alcohol. State v. Worachek, 98-2556, p. 9 (La.App. 1st Cir.11/5/99), 743 So.2d 1269, 1274. Also, in State v. Minnifield, 31,527, pp. 3-4 (La.App. 2nd Cir.1/20/99), 727 So.2d 1207, 1211, writ denied, 99-0516 (La.6/18/99), 745 So.2d 19, the evidence was sufficient where the officer observed the defendant weave out of the traffic lane three times; he staggered, slurred, smelled of alcohol, and gave a false name; and a second officer indicated that the defendant failed the horizontal gaze nystagmus test.
By contrast, in State v. St. Amant, 504 So.2d 1094 (La.App. 5th Cir.1987), an arresting officer's statement that the defendant smelled of alcohol, was unsteady on her feet, and seemed confused was insufficient to sustain the State's burden where the defendant did not appear intoxicated on a video recording of the field sobriety test. Similarly, in State v. Sampia, 96-1460 (La.App. 1st Cir.6/20/97), 696 So.2d 618, the defendant's conviction was not supported despite the arresting trooper's observations that the defendant, who was involved in an accident, smelled of alcohol, had slurred speech, and swayed slightly. The trooper did not observe the defendant until almost four hours after the accident and the defendant's speech and swaying could have been attributable to factors other than intoxication, such as her emotional state.
In the instant case, the evidence of defendant's intoxication consisted of Trooper Thaxton's personal observations of the defendant's physical condition, speech, and behavioral manifestations; the defendant's performance on the field sobriety tests; the defendant's statement that he had consumed "four or so" beers; and the defendant's refusal to take the breath test.
Trooper Thaxton, testifying on behalf of the State, indicated that the defendant had a strong odor of alcohol on his breath, his balance was "swaying" and his speech was slurred. Trooper Thaxton testified he performed various field sobriety tests. He stated during the horizontal gaze nystagmus (where the subject is requested to follow an object with his eyes and the officer looks for sudden involuntary jerking of the eye while following the object), defendant showed signs of all six intoxication indicators used in this test. During the "walk and turn test," despite having been specifically instructed to take nine steps, turn and walk back, the defendant took ten steps. On the turn, the defendant was off balance and failed to keep his hands to his side as instructed. Next, Trooper Thaxton asked the defendant to stand on one leg, raise the other leg and count from one to thirty. The trooper stated that defendant was "really unsteady," counted past thirty, and again failed to keep his hands down by his side *56 as instructed. Trooper Thaxton then asked the defendant to recite the alphabet beginning with the letter "C" and ending with the letter "T". He testified that the defendant started with "A" and missed several letters before ending with "Z". Then, Trooper Thaxton asked the defendant to touch the tip of his nose while holding his head back and keeping his eyes closed. According to Trooper Thaxton, the defendant touched the side of his nose and was unable to keep his eyes closed. Finally, Trooper Thaxton again administered the horizontal gaze nystagmus test. Again, the defendant showed all six intoxication "clues." Based upon these observed behavioral manifestations, Trooper Thaxton concluded that the defendant was intoxicated.
A videotape of the traffic stop and DWI investigation was also introduced into evidence and played for the jury at trial. The video, which does not contain audio, depicts the defendant performing the various sobriety tests described by Trooper Thaxton. At some point during the investigation, the defendant was relocated to a position at the far end of the video camera's range. Trooper Thaxton, in his testimony, explained the defendant was relocated to an area he felt more suitable for the walk and turn test. From the new position, it is difficult, if not impossible, to clearly view the defendant's performance on many of the sobriety tests. Thus, many of the behavioral manifestations described by Trooper Thaxton's testimony simply were not perceptible from the videotape. We note that this does not, however, conclusively indicate that the defendant was not intoxicated or impaired.
The defendant did not testify or present any evidence at trial. Through argument, the defense presented the hypothesis of innocence that the defendant was not impaired and performed satisfactorily on the field sobriety tests administered.
In finding the defendant guilty as charged, the jury obviously accepted the testimony of Trooper Thaxton and rejected the defendant's hypothesis of innocence. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Worachek, 98-2556 at p. 10, 743 So.2d at 1274.
After a careful review of the record and viewing all of the evidence in the light most favorable to the State, we find that any rational trier of fact could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that the defendant was intoxicated at the time he operated the vehicle on the night in question and, therefore, was guilty of DWI, fourth offense. This assignment of error is without merit.

CLOSING REBUTTAL ARGUMENT
In his final assignment of error, the defendant contends the State's rebuttal closing argument was prejudicial and constitutes reversible error. Specifically, the defendant avers certain comments made by the prosecutor during rebuttal argument "improperly invited the jurors to engage in a plebiscite on crime and raised the spectre of their own personal harm if the [defendant] was found not guilty." The contested statement came near the end of the State's rebuttal argument and was as follows:
You decide the verdict in this particular case. And we live by that decision. But it (sic) you choose to send a message about the way Trooper Thaxton handled this case, don't do it with the verdict. Do it with a letter to the State Police. Do it with a letter to his commander. Why didn't he turn on the monitor; why didn't he make sure it was properly  why didn't he position the defendant *57 properly. But if you feel like there's enough to show the defendant is under the influence, send a message. Find this man guilty. Don't take the chance that the next headlights you see are his.
Immediately following the final statement, counsel for the defendant entered a contemporaneous objection to the statement. Although no specific grounds for the objection were urged, it is obvious the defense counsel felt the statement was prejudicial. The trial court sustained the objection and instructed the jury to "Disregard the last comment." No further argument was presented by the State.
In regard to the contested comment, the defendant's objection was sustained and defendant requested no further relief of the trial court. A defendant whose objection is sustained by the trial court cannot, on appeal, complain of an error to which his objection was directed unless, at trial, he requested and was denied either an admonition or a mistrial. See State v. Robertson, 97-0177, p. 42 (La.3/4/98), 712 So.2d 8, 40, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998). State v. Lucas, 99-1524, p. 16 (La.App. 1st Cir.5/12/00), 762 So.2d 717, 727. Without having requested a mistrial, defendant received all the relief to which he was entitled when the trial court sustained his objection and admonished the jury to disregard the comment. This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed. All costs of this appeal are to be borne by the defendant.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The trial court also placed the defendant on supervised probation for a period of five (5) years, to begin immediately upon release from jail and to be monitored by the Louisiana Office of Probation and Parole. The trial court also ordered defendant to submit to inpatient substance abuse treatment, followed by outpatient treatment, home incarceration with electronic monitoring, and attendance in a driver improvement program.